[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANTS' MOTION TO DISMISS (#124)
 I. BACKGROUND
On July 15, 1999, the plaintiffs, Bette and William Stewart, filed an amended four count complaint against the defendants, Michael Gothie, Carol Gothie, the Groton Long Point Association, Inc. Zoning Commission, and Gordon Lange, Zoning Enforcement Officer for the Groton Long Point Association, Inc. (hereinafter "GLPA"). The plaintiffs are seeking injunctive relief or, alternatively, money damages as a result of the alleged zoning violations committed by the defendants.[1]
The plaintiffs allege that they are the owners of property located at 999 Groton Long Point Road, Noank, Connecticut. They further allege that the defendants, Michael and Carol Gothie (hereinafter "the defendants"), own property located at 1000 Groton Long Point Road, Noank, Connecticut.
The complaint alleges that the defendants, along with the prior owners of the lot, enlarged the buildable portion of the CT Page 15560 lot by adding additional fill and rocks to the easterly end of the lot, thereby permitting a larger home to be built, in violation of the Coastal Management Act, General Statutes § 22-90
et seq., the defendants' coastal site plan, and the GLPA zoning regulations. The defendants allegedly obtained a zoning permit from the Zoning Officer for the GLPA on October 2, 1997. They obtained a building permit on or about October 16, 1997. The plaintiff further alleges that the GLPA Zoning Commission did not consider or approve the defendants' site plan until March 4, 1998, in violation of General Statutes § 22a-109 (a)[2]
Moreover, the plaintiffs contend that notice was not properly given, pursuant to § 22a-109 (f).[3]
Additionally, the plaintiffs allege that the defendants violated certain zoning regulations of the GLPA. In particular, they claim that neither the setback requirements nor the width requirements of § 4.3.1 were satisfied. As a result, the plaintiffs allege that their view of the cove, Fishers Island and Fishers Island Sound, has been substantially "cut off," causing a significant diminution in the value of the plaintiffs' property. The plaintiffs allege further that the defendant Lange either improperly issued a zoning compliance certificate to the defendants or failed to issue a certificate in accordance with General Statutes § 8-3 (f).[4]
On August 2, 1999, the defendants filed a motion to dismiss the plaintiffs' complaint and a memorandum of law in support. The plaintiffs filed an objection to the defendants' motion to dismiss and a memorandum of law in support on August 3, 1999. The plaintiffs also filed an addendum to their memorandum on August 4, 1999.
 II. DISCUSSION
"It is well established that [i]n ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) Lawrence Brunoli, Inc. v. Branford, 247 Conn. 407, 410,722 A.2d 271 (1998). "The motion to dismiss shall be used to assert . . . lack of jurisdiction of the subject matter. . . ." Practice Book § 10-31; Zizka v. Water Pollution ControlAuthority, 195 Conn. 68.2, 687, 490 A.2d 509 (1985). "Because the exhaustion [of administrative remedies] doctrine implicates CT Page 15561 subject matter jurisdiction, [the court] must decide as a threshold matter whether that doctrine requires dismissal of the [plaintiff's] claim." (Internal quotation marks omitted.)Flanagan v. Commission on Human Rights Opportunities,54 Conn. App. 89, 91, 733 A.2d 881 (1999)
As previously stated, the plaintiffs allege that the defendants failed to comply with the provisions of § 22a-109 and violated certain zoning regulations of the GLPA. The defendants move. This court to dismiss the plaintiffs' complaint on the ground that the plaintiffs have failed to exhaust their administrative remedies, and that this court lacks subject matter jurisdiction.
"It is a settled principle of administrative law that, if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter." (Internal quotation marks omitted.) Simko v. Ervin,234 Conn. 498, 503, 661 A.2d 1018 (1995); see also O G Industries,Inc. v. Planning Zoning Commission, 232 Conn. 419, 425,655 A.2d 1121 (1995). "`The doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions. . . . The doctrine . . . furthers the salutary goals of relieving the courts of the burden of deciding questions entrusted to an agency . . . in advance of possible judicial review.'" Johnson v.Statewide Grievance Committee, 248 Conn. 87, 95, 726 A.2d 1154
(1999), quoting McKart v. United States, 395 U.S. 185, 195,89 S.Ct. 1657, 23 L.Ed.2d 194 (1969).
"Thus, [t]he two part rationale for the exhaustion doctrine is: (1) to effectuate the legislative intent that the issue in question be handled in the first instance by local administrative officials in order to provide aggrieved persons with full and adequate administrative relief, and to give the reviewing court the benefit of the local board's judgment . . . and (2) to relieve courts of the burden of prematurely deciding questions that may be resolved satisfactorily through the administrative process." (Internal quotation marks omitted.) Johnson v.Statewide Grievance Committee, supra, 248 Conn. 96.
"[T]he requirement of exhaustion may arise from explicit statutory language or from an administrative scheme providing for agency relief." (Internal quotation marks omitted.) Id., 97. CT Page 15562 Nonetheless, "when a party has a statutory right of appeal from the decision of an administrative agency, he may not, instead of appealing, bring an independent action to test the very issue which the appeal was designed to test." (Internal quotation marks omitted.) Laurel Park, Inc. v. Pac, 194 Conn. 677. 685,485 A.2d 1272 (1984).
"Although the general rule is that if an adequate "administrative remedy exists, it must be exhausted, like any other general rule, the rule of exhaustion of administrative remedies is subject to some exceptions . . . ."" (Internal quotation marks omitted.) Cummings v. Tripp, 204 Conn. 67, 81,527 A.2d 230 (1987). The court has "recognized such exceptions, however, only infrequently and only for narrowly defined, purposes." (Internal quotation marks omitted.) Johnson v.Statewide Grievance Committee, supra, 248 Conn. 103. "[A] party aggrieved by a decision of an administrative agency may be excused from exhaustion of administrative remedies if: recourse to the administrative remedy would be futile or inadequate; . . . the procedures followed by the administrative agency are constitutionally infirm; . . . or injunctive relief from an agency decision is necessary to prevent immediate and irreparable harm." Id.
The Connecticut Supreme Court has clarified that "`[a]ny person specifically and materially damaged by a violation of the zoning ordinances which has occurred or is likely to occur on another's land may seek injunctive relief restraining such violation [without exhausting administrative remedies.] (Emphasis omitted.) Simko v. Ervin, supra, 234 Conn. 504, quoting Cummingsv. Tripp, supra, 204 Conn. 75. In applying this particular exception, the Connecticut Supreme Court has expressly noted: "We cannot state too strongly, however, the necessity for clear and precise allegations of specific' and material claims of damage in order to establish the threshold requirement for this exception to the exhaustion doctrine." Cummings v. Tripp, supra, 76.
In support of their motion to dismiss, the defendants essentially argue that the plaintiffs have not alleged "specific and material claims of damage," as required under Cummings v.Tripp, supra, and therefore, this matter should be dismissed, as the plaintiffs must first exhaust their administrative remedies. In opposition, the plaintiffs essentially contend that by Virtue of their allegations in the complaint, they have sufficiently alleged that the noncompliance of all the defendants with the CT Page 15563 zoning regulations were so severe, either no house could have been built on the defendants' lot had the zoning regulations been properly adhered to, or the house as constructed would have been significantly smaller in size.
In their amended complaint, the plaintiffs allege that as a result of the defendants' violating the provisions of § 22a-109, as well as the GLPA zoning regulations, the plaintiffs' view of the cove, Fishers Island and Fishers Island Sound, has been substantially "cutoff," causing a significant diminution in the value of the plaintiffs' property. This court must decide whether the plaintiffs' allegations, as well as all facts necessarily implied from those allegations, constitute "specific and material claims of damage," as required by the court in Cummings v. Tripp, supra. The Connecticut Supreme Court has held that the mere depreciation of land values alone cannot sustain an injunction sought on the ground of nuisance without a strong factual showing. See Nicholson v. Connecticut Half-Way House, Inc.,153 Conn. 507, 512, 218 A.2d 383 (1966); see also Brainard v. WestHartford, 140 Conn. 631, 634, 103 A.2d 135 (1954). In Nicholsonv. Connecticut Half-Way House, Inc., supra, the plaintiffs sought injunctive relief to prevent the construction of a half-way house for state prison parolees on the ground of nuisance. The court determined that" [t]he plaintiffs' claim of depreciated property values is . . . ineffective as a basis for supporting the issuance of an injunction. The mere depreciation of land values, caused in this case by the subjective apprehensions of neighboring property owners and their potential buyers, cannot sustain an injunction sought on the ground of nuisance." Id.
In the present case, however, in addition to alleging a depreciation in their property value, the plaintiffs filed a Notice of Disclosure of Expert on July 23, 1999. In this Notice, the plaintiffs identify Jean Silverstein and F. Jerome Silverstein, two experts who are expected to testify at trial as to the impact of the defendants' actions on the value of the plaintiffs' property. "The Silversteins are expected to testify that they examined the plaintiffs' and Defendants' homes from the exterior as of May 4, 1999. Further they are expected to testify that they examined in detail the Plaintiffs' residence to place a value of the residence and property known as 999 Groton Long Point Road. . . . They are further expected to testify that the . . . Defendant's residence has blocked 90% of the preexisting view that the [Plaintiffs] had prior to the Defendants' construction, that the plaintiffs' home is in a CT Page 15564 desirable area, is 2000 square feet in size, has a dock, and a current value of $235,000. They are further expected to testify that the value would increase by $35,000 if the Defendants' home were not there." plaintiffs' Notice of Disclosure of Expert, dated July 23, 1999.
Viewing the complaint in the light most favorable to the pleader, the plaintiffs' allegations, if proven, would establish irreparable injury of the plaintiffs. This court finds that the plaintiffs have adequately alleged that the statutory and zoning violations by the defendants have significantly diminished the value of the plaintiffs' property. Therefore, the plaintiffs are entitled to seek injunctive relief without exhausting their administrative remedies. As such, this court finds that it has subject matter jurisdiction to consider the plaintiffs' application for injunctive relief. Accordingly, the defendants' motion to dismiss is denied.
D. Michael Hurley, Judge Trial Referee